UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY A. BIANCA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-636-JED-FHM |
| | ) |
| INDEPENDENT SCHOOL DISTRICT | ) |
| NO. 1 OF TULSA COUNTY a/k/a | ) |
| TULSA PUBLIC SCHOOLS, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

The Court has for its consideration Plaintiff's Motion for Partial Summary Judgment (Doc. 42) and the Motion for Summary Judgment (Doc. 39) and Opening Brief in Support (Doc. 40) filed by defendants, Independent School District No. 1 of Tulsa County, Oklahoma ("TPS"), Michelle Butler, and Kenny Rodrequez (collectively, the "School Defendants"). Plaintiff, Jeffrey Bianca ("Bianca"), seeks partial summary judgment as to his Title IX retaliation claim and the School Defendants request summary judgment as to all of Bianca's claims against them.

## BACKGROUND

Bianca was first employed full time by TPS in December of 2008. For the 2009-10 and 2010-11 school years, he was assigned to Tulsa Met-Lombard School, an alternative school for high school students where at-risk children and children with behavioral issues are placed. Bianca was a teacher/advisor at Met-Lombard.

In the Summer of 2008, Bianca met defendant Marvin H. Jeter, III, Ph.D. ("Jeter") who, at that time, was Associate Superintendent for School Innovation at TPS. Bianca and Jeter had occasional professional interactions over the next two years and some social interaction

beginning in the Summer of 2010. Following the conclusion of the 2009-10 school year, Jeter's position was eliminated, but he was re-employed by TPS for the 2010-11 school year as the principal at Met-Lombard, where Bianca worked.

Shortly after the 2010-11 school year began, students began reporting to Bianca that they felt uncomfortable around Jeter. Bianca initially attributed this to the fact that the students perceived Jeter to be homosexual, as did Bianca. Bianca alleges that, around the same timeframe, Jeter began to act in a sexual manner towards him, which at that time he perceived only as playfulness. According to Bianca, these actions included attempts by Jeter to hold Bianca's hand, have Bianca sit on his lap, and Jeter's simulation of sexual thrusting while pulling Bianca towards him. Jeter's behavior towards Bianca eventually escalated. Bianca alleges that, one day during a week that the two were carpooling to work, Jeter entered Bianca's house with his penis exposed. Bianca also alleges that Jeter grabbed Bianca's crotch on numerous occasions, stuck his tongue in Bianca's ear, and engaged in other behavior Bianca considered inappropriate. Following these events, Bianca's notion that Jeter's conduct was merely playful abated.

On October 13, 2010, Bianca arranged an after-school meeting at a local restaurant with defendants Kenny Rodrequez ("Rodrequez"), TPS' Director of Alternative Education, and Michelle Butler ("Butler"), TPS' Safe Schools Coordinator. Bianca's intention was to discuss with Butler and Rodrequez a fight between two students and a teacher that had occurred that day, and to discuss with Rodrequez his concerns about Jeter's behavior. After Butler left the meeting, Bianca told Rodrequez about his concerns that Jeter may have been showing inappropriate attention to male students and that Jeter had behaved inappropriately towards him. That same day, while at Met-Lombard, Rodrequez had also been told by Cynthia Brown, a teacher at the

school, that she had been approached by male students who stated that Jeter had made them uncomfortable. Two days later, another Met-Lombard staffer, Ellen Duecker, told Rodrequez a similar story.

Bianca states that, after his meeting with Butler and Rodrequez on October 13, Jeter did not engage in any further alleged harassment of him. On October 19, 2010, TPS suspended Jeter and he did not return, resigning from his position shortly thereafter. Subsequently, Bianca met with another school official and law enforcement regarding Jeter's behavior. An investigation was opened by the Tulsa Police Department, but no charges were filed against Jeter. Butler replaced Jeter, becoming principal of Met-Lombard approximately one week after Jeter was suspended.

On January 27, 2011, Bianca contacted Butler and Rodrequez to report that he had learned from a female student at Met-Lombard that she had been receiving inappropriate text messages from a teacher and coach at East Central High School, Matt Bell ("Bell"). A police investigation was opened into the matter, but Bell was never terminated by TPS. The School Defendants allege that the female student refused to cooperate in the investigation.

On February 24, 2011, Butler observed Bianca in the classroom. On April 8, 2011, Bianca received the performance evaluation related to the February evaluation. Butler gave Bianca an overall weighted evaluation score of 2.17, which reflects an ineffective teacher under TPS standards. If a TPS teacher receives a score below 3, he or she is placed on a personal development plan, or PDP, which is intended to identify what areas need improvement. Butler and Rodrequez met with Bianca on April 8 to discuss his PDP. Among other things, they told him that he needed to conduct himself in a more professional manner. Bianca did not agree with the evaluation, but acknowledged that he needed "to get my shit together." (Doc. 41-1, at 213-

14).  Overall, Bianca perceived the meeting as positive because Butler and Rodrequez were complimentary of his abilities and he described it as "encouraging." (*Id*., at 214).

A review of Bianca's PDP was scheduled for May 5, 2011.  Prior to that meeting, Butler and Rodrequez learned that, on May 2, 2011, Bianca had said "fuck that shit" in a parent-teacher conference with a student and the student's mother. (*Id*., at 203).  That same day, Bianca told his class to "shut the fuck up" in what Bianca states was an attempt to end a verbal conflict between students which had turned violent the day before. (*Id*., at 204-05; 208-09).  Bianca testified that his use of this language was effective in ending the confrontation. (Id., at 209).  On May 2, Butler sent Bianca an email reprimanding him for the language and stating that it would be discussed further in their May 5 meeting.

On May 5, prior to their scheduled meeting, Butler learned that Bianca told another Met-Lombard teacher that he had taken a student to the Eclipse Cultural Coffee House ("Eclipse") where Bianca was performing as a DJ.  Initially, Bianca took the student home from school and then went to Eclipse.  Upon realizing that people of all ages were permitted inside, he left, picked the student up, and brought him to Eclipse.  Bianca consumed alcohol during the time he and the student were there.  At the end of the evening, the student was aware that Bianca had consumed alcohol and asked if he could drive Bianca home in Bianca's car.  Bianca also permitted the student to take Bianca's car to the student's home and the student then picked Bianca up the next morning for school.  Bianca was unaware that the student did not have a driver's license at the time and had not inquired about whether he was licensed to drive.  According to Bianca, he had assumed that the student was licensed, as he had previously seen him driving a vehicle to school for a short period of time.  As noted, Butler informed Rodrequez of this incident prior to their meeting with Bianca, but they allege that they did not raise it with him in the meeting because

they were awaiting instructions from their superiors on how to proceed. In the May 5 meeting, Butler and Rodrequez informed Bianca that he was not in compliance with the PDP.

The following day Bianca was suspended. He received a due process hearing on June 21, 2011 and the school board voted to dismiss him. This vote took place despite the fact that Bianca had offered to resign under the condition that he be provided a neutral reference by TPS in the future. On August 29, 2011, Bianca filed the instant lawsuit in Tulsa County District Court against the School Defendants, as well as Dr. Keith E. Ballard, the Superintendent of TPS, Roberta Ellis, Chief Human Capital Officer for TPS, and Kevin Burr, Associate Superintendent for Secondary Schools for TPS.[1] On October 17, 2011, the defendants removed the action to this Court pursuant to 28 U.S.C. § 1331, 1441, and 1446. On March 12, 2012, Jeter filed his counterclaim against Bianca for defamation. The School Defendants now seek summary judgment as to all of Bianca's claims against them.

## STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the

---

[1] The claims against defendants Ballard, Ellis, and Burr were dismissed without prejudice by joint stipulation. (Doc. 11).

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

## ANALYSIS

### I.     Title IX Retaliation Claim

Bianca alleges a claim against TPS for retaliatory discharge under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Specifically, Bianca claims that TPS fired him because he reported sexual harassing behavior which was directed at him and others. TPS maintains that Bianca's termination had nothing to do with his reporting of harassment and

everything to do with his own behavior. Both parties seek summary judgment with respect to this claim.

Retaliation against a person because that person has complained of sex discrimination or harassment constitutes intentional discrimination "on the basis of sex" in violation of Title IX. *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 173–74 (2005). In evaluating such claims, courts have looked to the analogous and more developed case law governing Title VII retaliation claims. *See, e.g., Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206–07 (4th Cir. 1994); *see also Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 832 (10th Cir. 1993) (stating Title VII provides "the most appropriate analogue when defining Title IX's substantive standards" (quotation omitted)). Thus, absent direct evidence of a retaliatory motive, a plaintiff must prove intent through the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir. 1999). Under this analysis, the plaintiff must establish a prima facie case of retaliation, which requires a showing "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

At the prima facie stage, the Plaintiff's burden is 'not onerous,' which is evidenced by the 'small amount of proof necessary to create an inference of discrimination.'" *Orr v. City of Albuquerque,* 417 F.3d 1144, 1149 (quoting *EEOC v. Flasher Co., Inc.,* 986 F.2d 1312, 1318 (10th Cir. 1992)). Once a plaintiff can establish a prima facie case of retaliation, the burden

shifts directly to defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment actions which are at issue. *Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1104 (10th Cir. 2005). And once a defendant articulates its legitimate reasons for the adverse employment actions, the burden then shifts back to the plaintiff to show that the defendant's proffered reason for the adverse employment actions was pretextual. "A Plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action, which a reasonable fact finder could rationally find unworthy of credence." *Chavez*, 396 F.3d at 1104 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)). If a plaintiff presents evidence that the defendant's proffered reason for the employment decision was pretextual, i.e., unworthy of belief, plaintiff can withstand a summary judgment motion and is entitled to go to trial. *Kendrick v. Penske Transport Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

TPS advances two arguments in support of its request for summary judgment: Bianca cannot establish causation (i.e. that he was fired because he reported the harassment), and even if he could, he cannot demonstrate that TPS' stated justifications for his termination are pretextual. The Court finds that, even assuming Bianca could make a prima facie showing causation, it is of little consequence as he has failed to show that TPS' stated reasons for his termination are pretext.

TPS states that Bianca was terminated because he (1) used profanity in a parent-teacher conference; (2) used profanity in front of his class; and (3) took a student to an establishment where he consumed alcohol and then allowed the unlicensed student to drive him home at the end of the evening (hereafter "the alcohol incident"). Bianca says these justifications are pretextual for several reasons. First, he notes that he was evaluated by Butler only 10 days after

8

reporting the inappropriate text messages sent by Bell to a female student. He also points out that he was not permitted to resign in exchange for his request that he be given a neutral evaluation, whereas Jeter was permitted to resign, and Bell never lost his job. Third, Bianca states that other TPS employees used profanity but were not similarly disciplined.[2] Finally, Bianca argues that the positive letters of recommendation written on his behalf by Rodrequez, Jeter, and Kathy Williams, another of Bianca's supervisors, show that he was an exemplary employee, undermining Butler's harsh evaluation which preceded his termination.

  The arguments advanced by Bianca fall short of showing pretext. First, the timing of Butler's evaluation is largely irrelevant to the actual justifications given by TPS for Bianca's termination. The criticisms contained in the evaluation, which relate more broadly to Bianca's performance as a teacher, are not the reason TPS fired Bianca. Butler and Rodrequez did not learn of Bianca's use of profanity or the alcohol incident until after the April 8, 2011 meeting where the February evaluation was discussed. Thus, the evaluation – which Bianca points to as

---

[2] Bianca alleges that Butler used the word "bitch" in front of students and that she was aware of another teacher calling a student a "fat ass." Butler's affidavit (Doc. 40-3) states that she did refer to herself as "the fairest bitch you'll ever deal with," and that she was verbally admonished by Rodrequez after the incident. Bianca's only support for the allegation regarding other TPS employees' alleged use of profanity is a letter written by him to an unknown "State Representative," attached as Exhibit 11 to his motion for partial summary judgment (Doc. 42-11). As the School Defendants point out, this unsworn letter is hearsay and cannot be considered by the Court as evidence in opposition to summary judgment. *See, e.g., World of Sleep, Inc. v. La–Z–Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir.), *cert. denied*, 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985) ("Only admissible evidence may be considered by a court when ruling on a motion for summary judgment."); *Kaster v. Safeco Ins. Co. of Am.*, 212 F. Supp. 2d 1264, 1270 (D. Kan. 2002) *aff'd*, 82 F. App'x 28 (10th Cir. 2003) (declining to consider unsworn letter as evidence in summary judgment ruling). Even were the Court to consider the contents of the letter, it would not benefit Bianca's claim of pretext because it does not show that TPS' reliance on the alcohol incident as a justification for Bianca's termination is pretextual. *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000) ("[A]s a general rule, an employee must proffer evidence that shows *each* of the employer's justifications are pretextual.").

close in time to his reporting – was not the primary reason for his termination and thus raises no inference of pretext. Second, Bianca has provided no evidence that Jeter's resignation was permitted in exchange for a neutral evaluation, as was requested by Bianca. TPS has also provided evidence that action was taken with respect to Bell, but the student who received the inappropriate messages from him refused to cooperate in the investigation. Third, as noted above, Bianca's allegations regarding the use of profanity by others does not show pretext. Further, the alcohol incident is arguably the most problematic of Bianca's conduct, yet Bianca fails to address how TPS' reliance on it as grounds for termination is pretextual. Last, the positive recommendation letters written on Bianca's behalf (all written in September of 2010) preceded the events which TPS argues justified Bianca's termination; namely, the profanity and the alcohol incident. Given Bianca's failure to demonstrate pretext, TPS is entitled to summary judgment as to Bianca's Title IX retaliation claim.

**II.     Section 1983 Claim**

Bianca's petition further alleges a claim against Butler and Rodrequez for a civil rights violation under 42 U.S.C. § 1983. Bianca's response to the School Defendants' motion for summary judgment maintains that his § 1983 claim is one based upon a hostile work environment (*see* Doc. 76, at 10). Bianca also alleges that the "same evidence that negates summary judgment on Plaintiff's Title IX claim also defeats summary judgment as to Plaintiff's 42 U.S.C. § 1983 claim." (*Id*.) Thus, it is unclear from the petition whether Bianca's § 1983 claim encompasses both retaliation and hostile work environment theories. The School Defendants' briefing addresses both theories, as will the Court, especially in light of the fact that Bianca's petition could be interpreted as pleading both theories. (*See* Doc. 2-1, at 7-8).

As to the retaliation aspect, if any, of Bianca's § 1983 claim, the School Defendants argue that the analysis is essentially identical to Bianca's Title IX claim. The School Defendants also argue that Bianca waived any argument regarding retaliation in his response brief (Doc. 76) by not addressing the substance of the School Defendants' argument regarding summary judgment. This much is true. Bianca's response brief makes no mention of retaliation or the relevant standards relating to it. However, even assuming Bianca incorporated by reference his arguments in support of his Title IX claim, his § 1983 claim would still fail to the extent it is based upon retaliation.

The circuit courts which have considered sexual harassment claims under § 1983 have applied the same standards developed for Title VII claims – just as has been done for claims such as Bianca's Title IX claim.[3]  *See Hindman v. Thompson*, 557 F. Supp. 2d 1293, 1308 n.18 (N.D. Okla. 2008) (collecting cases). Thus, the very same analysis applied to Bianca's Title IX claim applies to his § 1983 claim for retaliation. Based upon the analysis above regarding Bianca's Title IX claim, summary judgment is appropriate on Bianca's § 1983 to the extent it is based upon retaliation.

To the extent Bianca's § 1983 claim is one for hostile work environment, defendants Butler and Rodrequez argue that they are still entitled to summary judgment because Bianca has failed to present evidence sufficient to establish supervisor liability under § 1983. As an initial matter, Bianca does not allege that Butler and Rodrequez engaged in sexually harassing behavior which would subject them to liability. Instead, his claim is based upon the theory that, as supervisors, Butler and Rodrequez had some degree of responsibility to ensure Bianca was not subject to a hostile work environment.  (*See* Doc. 2-1, at 7-8). It is well established that there is

---

[3] The Tenth Circuit has not spoken to this issue.

"no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (internal quotation omitted). Hence, a plaintiff must establish "a deliberate, intentional act by the supervisor to violate constitutional rights" by showing that the "defendant-supervisor *personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance.*" *Id.* (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992)) (italics added). In short, Bianca must show that Butler and Rodrequez directed Jeter to sexually harass him, or that they had actual knowledge of the alleged harassment and acquiesced in its continuance.

Bianca has put forth no evidence suggesting Butler or Rodrequez directed Jeter to harass him. As to actual knowledge, Bianca first reported to Rodrequez that Jeter was harassing him on October 13, 2011. Bianca has acknowledged that Jeter did not engage in any further harassment after that date. (*See* Doc. 40-1, at 132-34). No evidence has been advanced which shows that Bianca ever reported the alleged harassment to Butler, nor has Bianca suggested as much. It is thus clear that Bianca has not demonstrated that Butler and Rodrequez knew of, and acquiesced to, Jeter's alleged harassment of Bianca. Hence, summary judgment in favor of Butler and Rodrequez is appropriate with respect to Bianca's § 1983 claim.

### III. Tortious Interference

Bianca's petition also includes a claim under Oklahoma law for tortious interference with a contractual and/or business relationship against Butler and Rodrequez, which they also now seek to resolve by summary judgment.[4]

---

[4] In his response to the School Defendants' motion for summary judgment, Bianca attempts to enlarge this claim to encompass interference with prospective economic advantage. He is, of course, bound by what is pled in his petition. Interference with a contract/business relationship is a separate and distinct tort from interference with prospective economic advantage. *See Overbeck v. Quaker Life Ins. Co.*, 757 P.2d 846, 848 (Okla. 1984) ("the subtle differences

To prevail on a claim for tortious interference with a contractual or business relationship, a plaintiff must show: "(1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Technologies, Inc. v. DunAn Holding Grp., Co., Ltd.*, 204 P.3d 69, 74 (Okla. 2009). In addition, the parties agree that, because the claim is based upon two supervisors' purported interference with their employer's contract with Bianca, he must also prove that Butler and Rodrequez acted "in bad faith and contrary to the interest of the employer." *Wilson v. City of Tulsa*, 91 P.3d 673, 679 (Okla. Ct. App. 2004).

> As to his necessary showing of bad faith, Bianca states the following, and nothing more:
>
> The key factors are that the individual employers [sic] acting in bad faith and contrary to the interests of the employer. Plaintiff can clearly do this. Defendants Rodrequezs [sic] and Butler interfered with Plaintiff's contractual relationship by acting maliciously and in bad faith and were motivated by a desire to obscure their unlawful conduct and suppress Plaintiff's rights and specifically stated their conduct.

(Doc. 76, at 11). No further explanation is provided as to what, if any, evidence has been provided by plaintiff which would demonstrate that Butler and Rodrequez acted in bad faith or contrary to the interest of TPS. This Court will not make the argument for plaintiff. In any event, based upon the Court's review of all record materials, it does not appear that any evidence has been presented which would demonstrate that Butler or Rodrequez acted in bad faith or contrary to TPS' interests in recommending Bianca's termination. Accordingly, defendants Butler and Rodrequez are entitled to summary judgment on this claim.

---

between tortious interference with a prospective economic advantage and tortious interference with a contractual or business relation is more than just a semantical one, and thus we decline to treat the two synonymously"). Accordingly, the Court will address only Bianca's claim for tortious interference with a contractual or business relationship.

### IV. Civil Conspiracy

Plaintiff's petition also outlines a claim for civil conspiracy. Under Oklahoma law, civil conspiracy consists of two or more persons agreeing "to do an unlawful act, or to do a lawful act by unlawful means." *Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 201 (Okla. Ct. App. 1999). But, "a conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim." *Id*. Having found that the School Defendants are entitled to summary judgment with respect to all of Bianca's claims against them, it follows that they are entitled to summary judgment on his civil conspiracy claim, as no unlawful act has been established by Bianca.

### V. State Law Claims between Bianca and Jeter

The only remaining claims in this action are Bianca's claim for battery against Jeter and Jeter's counterclaims for slander per se and ordinary defamation. Given that this action was removed by defendants solely on the basis of Bianca's federal claims, this Court has exercised supplemental jurisdiction over the claims between Bianca and Jeter under 28 U.S.C. § 1367. As a court of limited jurisdiction, this Court is obligated to examine whether it should continue to exercise supplemental jurisdiction over these state law claims. *See Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1168 (10th Cir. 2004) (finding lack of supplemental jurisdiction over state law claims *sua sponte*).

In light of this Court's determination that summary judgment should be, and is, granted with respect to all federal claims presented in this litigation, there are no remaining federal questions to be adjudicated. In the notice of removal, the sole basis for jurisdiction alleged was the existence of federal questions; specifically, Bianca's § 1983 and Title IX claims. (*See* Doc. 2). No party in this case has asserted diversity as a basis for jurisdiction, and it appears from the

14

record that diversity is not present. Under the circumstances presented here, the Tenth Circuit has recognized that the preferred practice is to decline to exercise supplemental jurisdiction over a remaining state law claim where a basis for original jurisdiction is no longer present. *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008) (affirming district court's decision to decline supplemental jurisdiction over state law negligence claim where summary judgment was granted as to § 1983 claims); *Lawler v. QuikTrip Corp.*, 172 F. App'x 873, 877 (10th Cir. 2006) (affirming district court's summary judgment order dismissing state law claims under 28 U.S.C. § 1367); *see also Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims"). Instead of dismissing the state law claims between Bianca and Jeter without prejudice, these remaining state law claims shall be remanded to the Tulsa County District Court for further proceedings. *See Schachter v. PacifiCare of Oklahoma, Inc.*, 923 F. Supp. 1448, 1453 (N.D. Okla. 1995).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 42) is **denied**. The School Defendants' Motion for Summary Judgment (Doc. 39) is **granted** as to all claims against defendants TPS, Butler, and Rodrequez. The School Defendants' Motion in Limine (Doc. 51) and Bianca's Motion in Limine (Doc. 52) are **moot**.

**IT IS FURTHER ORDERED** that the state law claims alleged by plaintiff Bianca against defendant Jeter and counterclaims alleged by defendant Jeter against plaintiff Bianca are hereby **remanded** to the Tulsa County District Court.

**SO ORDERED** this 16th day of July, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE